**ALLYN v. ABAD.**

No. 9369.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 16, 1947.

Decided March 9, 1948.

Edward V. Ryan, Asst. U. S. Atty., of Newark, N. J. (Edgar H. Rossbach, of Newark, N. J., U. S. Atty., on the brief), for appellant.

George J. Baumann, of Jersey City, N. J. (Atwood C. Wolf, of Jersey City, N. J., on the brief), for respondent.

Before BIGGS, GOODRICH, and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

The petitioner herein appeals from an order denying him restoration and compensation rights to which he asserts he is entitled by Section 8 of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 308.

The facts as adduced by the testimony and found by the trial court may be briefly summarized. Petitioner was employed in January, 1941, by respondent, a wholesale grocer. When he was inducted into the military service in July, 1943, he was acting principally as an outside salesman, in which capacity he visited customers of respondent and solicited business. Two other men, Ydoski and Hyman by name, both of whom had been employed by respondent after petitioner was, were doing like work at that time.[1]

Shortly after petitioner's induction, respondent changed his method of doing business. Outside salesmen were no longer utilized. Ydoski and Hyman assumed different positions,[2] their new duties consisting principally of taking telephone orders from respondent's customers, buying food

---

[1] The testimony indicates that, at one time, respondent had had eleven such employees.

[2] Whether their salaries reflected the new duties assumed is not clear from the testimony. Neither Ydoski nor Hyman appeared on the witness stand. Respondent testified that, at the time of the trial, Ydoski was receiving "$70 per week, plus $100 per month extra, plus a share of the profits," and Hyman "$70 per week, plus $50 per month, plus also a share of the profits." There was no testimony concerning their salaries when petitioner was inducted or when they assumed their new duties. At petitioner's induction, about 3½ years before the trial, he was earning $45 per week plus $10 weekly for car expenses.

for resale, and advising respondent on business matters. A special agent of the F.B.I. testified that when he asked Ydoski and Hyman what their jobs were, they replied that they were salesmen, and that they mentioned their other activities only after respondent said, "You do other things, too."

Petitioner applied for restoration on April 29, 1946, and again on July 1. He was denied restoration on both occasions. For 1½ weeks between these two dates, he worked for Hearns' Department Store. On October 14, 1946, he was employed by the Frank Price Company, for which he was working at the time of trial.

At the hearing, testimony was offered by both sides. Then respondent moved for a dismissal of the petition. After arguments on the motion were made by counsel, the court said, "I think the motion to dismiss will have to be sustained in this case. My view is that there was a reorganization of the business here and there were no salesmen being employed of the type which the plaintiff belonged to when he left for the service, and there was a complete reorganization of the company and the employees whom he presumes to supplant here were taken in on a confidential basis and are really executives. It seems to me the law in the case cited does not govern and I will sustain the motion to dismiss the petition."[3] With these words the trial ended.

Nine days later, however, the trial judge filed an order which included findings of fact, conclusions of law, and a judgment for defendant. Since the findings of fact included the disposition of issues which had been closely contested at the trial, we assume that the trial judge decided not to base judgment upon the motion to dismiss. Indeed, it is clear that the granting of the motion to dismiss would have been reversible error, since petitioner's evidence in its most favorable light unquestionably was sufficient to warrant findings that the jobs of Ydoski and Hyman were of "like seniority, status, and pay" to that of petitioner at the time of his induction and that respondent's circumstances had not changed substantially.

We come, therefore, to the consideration of the order itself. The facts relevant to our present consideration, as found by the trial judge, may be summarized as follows:

(1) Respondent did not place other salesmen in petitioner's territory. This is not disputed by petitioner. It is significant to note, however, that respondent admitted that he was still selling to accounts which petitioner had handled prior to induction.

(2) " * * * Respondent reorganized his business, and under the reorganization plan, the salesman's department was abolished." As we understand this finding, we believe no issue would be taken by either litigant. The court was referring to the realignment of the duties of respondent and his employees. No "salesman's department" as such existed after the "reorganization." It is obvious, however, that the sales *function* continued, with the difference that sales were made through communications systems rather than through personal contacts at the customers' retail outlets. The reason why it was no longer necessary for salesmen to visit respondent's customers was the scarcity of merchandise with the consequent appearance of a strong seller's market. Cf. Loeb v. Kivo, S.D. N.Y., 1947, 77 F.Supp. 523.

(3) "The employees whom petitioner presumes to supplant were taken in on a confidential basis and are really executives." This is a finding which petitioner challenges. On the basis of the printed record, we are inclined to believe that the weight of evidence may have warranted a contrary finding. We are aware, however, that the trial judge had the opportunity to observe the witnesses and evaluate their credibility, and in Van Doren v. Van Doren Laundry Service, 3 Cir., 1947, 162 F.2d 1007, at page 1009, we said, "There being substantial evidence to support the trial court's finding on a closely contested question of fact, we are not disposed to weigh the evidence anew." Accordingly, we accept the finding that Ydoski and Hyman enjoyed a confidential relationship and that their work involved executive functions. This, of course, does not mean that they did not also

---

[3] From the record we are unable to determine which "case cited" was meant by the trial judge.

perform a sales function which may well have been their primary duty.

(4) "Respondent has no need" for a saleman in the territory where petitioner used to work, "because it [sic] has so reorganized its business that it does not require the services of salesmen." If the trial judge's use of the word "salesman" is construed to mean "outside salesman," the meaning becomes clear. We are satisfied that the trial judge was convinced that the restoration of petitioner might have resulted in some inconvenience and loss of efficiency.

The trial judge, however, failed to note that, in Kay v. General Cable Corporation, 3 Cir., 1944, 144 F.2d 653, at page 655, we set forth a more exacting standard for justification of a refusal to restore a returning veteran. See also Van Doren v. Van Doren Laundry Service, supra, at page 1009 of 162 F.2d. Some loss of efficiency or in economy of operation, in and of itself, does not render restoration "unreasonable." The purpose of this exception was to free the employer of the burden of creating a useless job. In the case sub judice, the trial judge did not make a finding that restoration of petitioner would have that effect; nor, indeed, as we analyze the record, could such a finding have been supported by the evidence introduced. Telephone sales, which petitioner had made prior to his induction, became the dominant sales method of respondent. The record contains no evidence which even suggests that petitioner was less qualified to perform this function after his return than at the time of his induction.[4] We conclude, therefore, that the circumstances of respondent had not so changed as to render "unreasonable" the restoration of petitioner.

As stated previously, we must accept the trial judge's finding that the present organization of respondent does not include a position which viewed objectively is precisely like that which petitioner left at induction. It is obvious, however, that this finding alone is not sufficient to nullify the right to restoration which the statute granted. Aware that with the passage of time and possible manpower shortages it might be expedient for some businesses to reassign duties of their employees so as to permit greater efficiency of operation, Congress provided that the returning veteran was to be restored to "such position *or to a position* of like seniority, status, and pay" unless such restoration would be impossible or unreasonable. (Emphasis supplied.) This is not a situation in which the sales function has disappeared; Ydoski and Hyman are still acting as salesmen. While petitioner cannot claim the right to supplant them, owing to their now enjoying a confidential-executive relationship as well, we can see no reason why the intent of the statute could not and cannot be effectuated by restoration of petitioner to a position as salesman, to the performance of which function he has a superior right by virtue of his seniority over Ydoski and Hyman, at the same salary as he received at induction, to wit, $45 per week.

From the foregoing, it becomes clear that petitioner is entitled to restoration. Whether compensation is likewise due him, under the principles enunciated in Van Doren v. Van Doren Laundry Service, supra, is a question upon which the court below was not required to pass, because of its conclusion that under the circumstances it was not incumbent upon respondent to restore petitioner.[5] Our ruling to the contrary makes it appropriate that the cause be remanded to the court below for determination of the compensation question which still remains.

Accordingly, the order of the district court will be reversed and the cause will be remanded for further proceedings in accordance with this opinion.

---

[4] Some testimony intimated that petitioner's handwriting was poor. This reason, of course, is unacceptable in the total absence of evidence that clear handwriting was essential to the performance of the function and that petitioner's handwriting, suitable before induction, was unsuitable upon his return.

[5] The record does not disclose the earnings of petitioner at Hearns' Department Store and at the Frank Price Company; nor was evidence adduced whether petitioner received veterans' unemployment readjustment allowances authorized by the Act of June 22, 1944, c. 268, Title V, 38 U.S.C.A. § 696, during the one-year period beginning on April 29, 1946.